CITY OF FAIRBANKS, a Municipal Corporation for the State of Alaska, Appellant,

v.

METRO COMPANY, a partnership consisting of Robert J. Mitchell, et al., Appellees.

CITY OF FAIRBANKS, a Municipal Corporation for the State of Alaska, Appellant,

v.

VAN HORNE LODGE, INC., an Alaskan Corporation, and 20,300 Square Feet of Land, more or less, located in the Fairbanks North Star Borough, Appellees.

No. 2504.

Supreme Court of Alaska.

Oct. 2, 1975.

---

4. *Id.*

Frank Kernan, City Atty., Steven J. Call, Deputy City Atty., Fairbanks, for appellant.

Peter J. Aschenbrenner, Fairbanks, for appellees.

Before RABINOWITZ, Chief Justice, and CONNOR, ERWIN, and BOOCHEVER, Justices.

## OPINION

ERWIN, Justice.

This case involves an attempted condemnation of certain parcels of land by the City of Fairbanks for purposes of the construction of a sewer line. Although the trial court determined that the City has the statutory authority to exercise the power of eminent domain over the properties in question, it nevertheless denied the petition for condemnation on the ground that the City had failed to sufficiently establish the necessity of the taking under AS 09.55.-270(2).[1] The court subsequently denied

---

1. AS 09.55.270 provides in part:

    *Prerequisites.* Before property can be taken, it shall appear that

    \*     \*     \*     \*     \*

    (2)   the taking is necessary to the use;

    \*     \*     \*     \*     \*

the City's motion for reconsideration of its decision.

In the recent case of *Arco Pipeline Co. v. Stewart*, 539 P.2d 64 (Alaska, 1975), this Court examined the nature of judicial review of the question of necessity in condemnation proceedings,[2] and indicated that one seeking to show that a particular taking is excessive or arbitrary has a heavy burden of proof in the attempt to pursuade the court to substitute its judgment for that of the condemnor.[3] We also intimated that although the condemnor may have the burden of making a prima facie showing of necessity, the language of AS 09.-55.270(2) ought to be construed to require no more than that the particular taking be shown to be "reasonably requisite and proper for the accomplishment of the purpose for which it is sought."[4] We take this opportunity to announce the applicability of the analysis suggested in *Arco* to cases arising under AS 09.55.270(2).

▮▮▮▮▮▮ We hold today that in general condemnation proceedings under AS 09.55.-240–09.55.410, once the condemnor has presented sufficient evidence to support a finding that a particular taking is "reasonably requisite" for the effectuation of the authorized public purpose for which it is sought, particular questions as to the route, location, or amount of property to be taken are to be left to the sound discretion of the condemning authority absent a showing by clear and convincing evidence that such determinations are the product of fraud, caprice, or arbitrariness. Our review of the record in the instant case convinces us that the City clearly met its initial burden of demonstrating that its taking was reasonably necessary under the circumstances.[5] Moreover, the evidence presented to the effect that the City's location of the sewer line on one side of the street as opposed to the other *might* entail higher acquisition and construction costs, and that a larger number of people were located on the other side by virtue of recent land development in the area, does not qualify as clear and convincing evidence that the City's determination was arbitrary or amounted to an abuse of discretion.[6]

2. Although the case was in fact concerned with review of determinations of necessity in condemnation proceedings under a declaration of taking, we alluded by way of comparison to the nature of such review in general proceedings in eminent domain. In so doing we recognized the precedential value of Montana case law on this point in noting that many of Alaska's general condemnation provisions—including, particularly, AS 09.55.-270—were taken from Montana statutes. *Arco Pipeline Co. v. Stewart*, 539 P.2d 64, at 69 & n. 17, 70–71 (Alaska, 1975).

3. *Id.* at 71, where we quoted from *State Highway Comm'n v. Crossen-Nissen Co.*, 145 Mont. 251, 400 P.2d 283, 285 (1965), for the proposition that such proof must be clear and convincing.

4. *Id.* at 71, *quoting from State Highway Comm'n v. Crossen-Nissen Co.*, 400 P.2d at 284; *accord, State Highway Comm'n v. Yost Farm Co.*, 142 Mont. 239, 384 P.2d 277, 279 (1963); *State ex rel. Livingston v. District Court*, 90 Mont. 191, 300 P. 916 (1931).

5. The City presented expert testimony to the effect that a number of alternate routes for the sewer line were considered, and that the decision to locate it on the south side of the street (as opposed to the north side, the alternate route proposed by the property owners) was based upon an estimated $40,000 saving in costs as of December, 1972, when the decision as to the location of the line was made. The two proposed routes were otherwise substantially equal in terms of other considerations such as environmental and engineering requirements.

6. We note that the property owners presented expert testimony that as of October, 1974, the cost of contructing the line on the route selected *might* be as much as almost $7,000 greater than that projected for the other side. It was conceded, however, that there was considerable latitude in these cost projections, and it might still be cheaper to build on the route selected. On this state of the record, we are hardly convinced that any clear showing was made that the alternate route was in fact preferable, even in terms of cost, let alone persuaded that such a showing would itself justify a finding that the City's decision was arbitrary.

While the property owners argue that their inability to hook up to the sewer line is a substantial consideration in evaluating the propriety of the actions of the City, we are not persuaded that this factor is of any great or overriding significance in light of the circumstances and the other evidence presented. While it is true that the inability of a particular condemnee to obtain immediate beneficial use from the project may be considered as a factor in weighing the project's impact in terms of the degree of private injury involved in a proposed route or location,[7] the interest in minimizing private injury is not absolute and must always be weighed in relation to the goals and efficacy of the project in its entirety at the time such determinations are made.[8] That certain property owners suffer relatively greater injury than others, or are less directly benefited by the project, does not establish that the taking of their property is unnecessarily injurious or unwarranted.[9] After reviewing the record before us, we are convinced that no such showing that the taking of the property is unnecessarily injurious or unwarranted was made here.

The decision of the superior court is reversed and the case is remanded with instructions to enter an order in favor of the City of Fairbanks on the issue of necessity under AS 09.55.270(2).

Reversed and remanded.[10]

BURKE, J., not participating.

---

7. It is not seriously contended here that the project must provide a direct or immediate benefit to each condemnee in order to legitimate the particular taking.

8. We note that the planning and approval of the sewer project was completed approximately two years before the condemnation hearings were held, and it was at this time that bonds were sold and initial work on the project was commenced. It is clear that the requirements of effective advance planning and financing of public improvements, as well as the degree of certainty and specificity normally required in public construction contracts, operate to circumscribe the project's ability to adapt to subsequent individual design changes. We cannot say, on the record before us, that the City was unmindful of minimizing private injury at the time it completed its plan, or that conditions had so changed by the time condemnation proceedings were commenced two years later that its original considerations were inapplicable or that the planned route was no longer justifiable.

9. See *State Highway Comm'n v. Crossen-Nissen Co.*, 400 P.2d at 286, where it was recognized that individual losses and hardships are endemic in condemnation cases, but that evidence of such hardship or that other feasible routes were available does not of itself supply the clear and convincing proof required to negate the determinations of the condemning agency, or to establish that the taking is unnecessarily injurious. *Accord, State ex rel. Livingston v. District Court*, 90 Mont. 191, 300 P. 916 (1931).

10. Our decision in this case was announced from the bench after oral argument, and the mandate has previously issued.